REGAN, Judge.
Plaintiff, Louis J. Moreau, sued defendant, John G. McGehee, on a promissory note dated May 31, 1947, in the amount oí $2,000, which note was identified with an act of sale of certain laundry machinery and a chattel mortgage, praying for a judgment on sai.d note, less a credit of $300, paid on the principal thereof and for a sale of the laundry machinery in accordance with the terms of the act of sale -and cbat-. tel mortgage.
Defendant answered admitting the debt but opposed the said sale, contending that plaintiff had breached the warranty stipulated in the sale and that he was required to expend the sum of $852.83 in order to repair the said, machinery purchased from plaintiff.
The Court, a qua, granted a preliminary injunction enjoining- the sale of the machinery .in question pending a trial on the merits. At the termination of the trial on the merits, there was judgment in favor of defendant,, allowing the counterclaim for repairs in the amount of $852.83 and permanently enjoining plaintiff from seizing and selling the laundry machinery for the unpaid balance due on the note. Hence this appeal by plaintiff.
The record .reflects that plaintiff, who had formerly operated a laundry in the basement of. his home in Pineville, Louisiana, became ill yvith a heart ailment and, upon the admonitions of his physician, retired on or about November 25, 1945. Plaintiff thereafter advertised the laundry equipment for sale through the medium of the Times-Picayune Publishing -Company. The record, while vague as to what response plaintiff received from this advertisement, *834 does show definitely that one J. E. Carter, affiliated as a salesman with the American Laundry Machinery Company, called on plaintiff, inspected the machinery, and said he had a close friend who was interested in this type of equipment, and he would advise this friend to buy it. In April or the early part of May, 1947, defendant, through the solicitations of Carter, visited plaintiff’s establishment and learned also that plaintiff had retired and had not operated the machinery since November of 194S. Defendant carefully examined the equipment over a period of several hours and tentatively agreed to purchase it.
Shortly thereafter, on May 31, 1947, plaintiff and defendant formally entered into an agreement evidenced by an act of sale and chattel mortgage, whereby plaintiff sold to defendant the following described laundry machinery:
“One (1) fifty horse-power, water tube boiler, steam master manufacture Serial No. 13029, together with return system, pump, hot-water tank, fully automatic, with all piping, gauges and fixtures.
“One (1) thirty inch Adams extractor, belt-driven, serial No. 6-24.
“One (1) ■ western wet washer, forty inches by fifty-four inches, serial No. 4479.
“One (1) Butler Distillation system, serial No. 380 349, together with paints, pipings, meters, gauges and all other fixtures.
“One (1) five horse-power motor, General Electric, serial No. 65722 with shafting, pulleys, etc.
“One (1) three inch gas line to accompany boiler.”
This machinery was sold for the price of $3000, of which $1000 was paid in cash and a promissory note for the balance was executed by defendant, dated May 31, 1947, in the sum of $2,000, payable in twenty monthly installments of $100 each, the first payment due one month after date and monthly thereafter. The said note was drawn to the order of plaintiff bearing interest of 6% per annum oh the unpaid balance, and paraphed “ne varietur” to identify it with an act of sale and chattel mortgage passed before Sol. B. Pressburg, Notary Public for the Parish of Rapides, Louisiana! The act of sale and chattel mortgage contained the following contentious stipulation “guaranteeing it to be in first class order, complete and ready for operation”, and, of course, the instrument contained all of the usual clauses for acceleration and for confession of judgment, etc., and, in case of suit, defendant agreed to pay 10% attorneys’ fees.
The act of sale and chattel mortgage were prepared by defendant’s attorney, who accompanied defendant to Pineville, Louisiana, to facilitate the consummation of the act of sale.
On a Sunday following the sale, defendant, with the aid of an employee, dismantled the machinery on plaintiff’s premises and had it removed to 'defendant’s place of business in 123 Focis Street, Me-tairie, Louisiana, where it presumably is now.
The record reflects that defendant made the following payments of interest and principal on the note in the amount of $2000 which he executed in favor of plaintiff.
June 26, 1947 $10.00 on interest
July 28, 1947 $10.00 on interest — ■
$100.00 on principal
Sept. 2, 1947 $ 9.50' on interest—
$100.00 on principal
October 2, 1947 $ 9.00 on interest—
$100.00 on principal
Jan. 2, 1947 $25.50 on interest.
No other payments were made by defendant, and plaintiff, on March 22, 1949, instituted this suit and contended that there was a balance of $1,700 due on the note, together with interest at the rate of 6% per annum from December 30, 1947, and 10% of the anlount due as attorneys’ fees.
Defendant, on the other hand, admits that he purchased the property described in the act of sale, but insists that since the sale contains the clause “guaranteeing it to be in first class order, complete and ready for operation”, “there has been’’ on the part of plaintiff “a breach in the warranty thus granted in that the equipment was not in first class order, complete and • ready for *835 operation at the time that it was set up in his plant, and that he was required to expend the sum of $852.83, in order to place the said equipment in proper working order”, and during the trial below defendant, in support of this contention, offered in evidence, en masse, and without detailed explanation, innumerable invoices which he allegedly paid amounting to the sum of $852.83.
Plaintiff contends that the clause in dispute is ambiguous and a fortiori “the intention of the parties may be ascertained outside of the terms of the written- sale”. In passing we do not share this view. Obviously the clause is not positioned rhetorically to elegantly reflect a refined association of ideas, however, it does not meet the true test of ambiguity in the sense that it lends itself to two or several interpretations.
While the record is embellished with vagueness, confusion and disputations ad infinitum, it is clear on one point and that is that defendant made no complaint to plaintiff relative to the defectiveness of the machinery until sometime in the latter part of December of 1947, and we are dubious if a complaint was made even then, which was approximately seven months after the consummation of the transaction; and the payments set forth herein-above made on account of the note, in our opinion, bear out the logic of this conclusion. Defendant laboriously endeavors'to reluctantly explain that he only paid the interest due on the note on January 7th, 1948, because plaintiff informed him that the bank in Alexandria, Louisiana, which held the note for collection, would return it to plaintiff if no payments were forthcoming. Plaintiff, in contradiction, contends that he called at defendant’s place of business “after Christmas” of 1947, and requested a payment on the note, and that defendant pointed out to him that the tin sheathing covering the exterior of his building had to be removed and concrete blocks substituted in order to render the building more fireproof and he needed the money for that purpose. The credibility of this -contention is fortified by the implication of the last payment on account of interest made on the note. The payment was made on January 7, 1948, and paid the interest due from September 30, 1947, on the full unpaid balance of the note — $1,700—through December 30, 1947. It does not appear either probable or credible to this court, that the machinery could be defective and, despite that fact, defendant magnanimously continued to make payments of principal and interest on account of the note and refrained from complaining thereof to plaintiff until approximately seven months after the machinery had been in active operation.
The untenableness of defendant’s resistance to plaintiff’s claim is further amplified by the undisputed fact that defendant himself dismantled the machinery, and was in a most advantageous position to observe the existence of any defects then, and subsequently, defendant assembled the machinery in his own plant and again possessed the opportunity to observe the existence of any defects while the machinery was in actual operation. .
We are, • therefore, of the opinion that defendant is not entitled to any set off for the repairs of the alleged defective machinery.
In Owens v. Felder, 35 So.2d 671, 672, we said: — “We are reluctant to reverse the finding of a trial court based primarily on questions of fact, but in a case, such as we are presently analyzing, it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial.”
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and the permanent injunction is recalled and dissolved. It is further ordered that there be judgment herein in favor of the plaintiff, Louis J. Moreau, and against the defendant, John G. McGehee, in the full sum of $1,700 with interest at the rate *836 of 6% per annum, from December 30, 1947, until paid, together with 10% of the amount due and exigible as attorneys’ fees. Defendant to pay all costs.
Reversed.